IN RICHMOND SUPERIOR COURT, JULY, 1832.

Eli Glover *vs.* A. and J. M. Woolsey & Co.

*Assumpsit, and Motion for New Trial.*

RICHMOND,
July, 1832.

GLOVER
*v.*
WOOLSEY &
Co.

In this action the plaintiff claims from the defendants damage for the loss of one hundred and sixty four bales of cotton, consigned by plaintiff to them as factors and commission merchants of New York, and burnt in Brooklin where it was stored in consequence of quarantine regulations of the port of New York. There are several counts in the declaration, though but two grounds on which the plaintiff insists upon his right to recover. The first is, defendants' carelessness and negligence in storing the cotton in wooden buildings, insecure, and subject to extra-hazardous risks. The second is, their breach of positive orders to insure or store in a fire-proof warehouse.

This is an important case; but its importance is principally owing to the amount in controversy. The legal principles involved are plain and well settled. The chief difficulty has always been found in the facts; and so great has that difficulty been, that two successive juries were not able to agree upon them. A verdict having been ultimately rendered for the plaintiff, the defendants now move for a new trial on the following grounds.

1st, Because the verdict of the jury is against the law of the case.

2d, Because it is against the weight of evidence.

3d, Because it is against the equity and justice of the case.

4th, Because one of the jury that tried the cause was the security for the plaintiff upon the appeal by him.

5th, Because new and material evidence has been discovered in favor of the defendants.

*Per Curiam.* Whether the verdict be or be not "against the law of the case" must necessarily depend very much upon the facts of the case. The law of the case is this, that a factor is bound to take reasonable care of goods committed to his charge, that is, such care as a man of ordinary prudence would take of his own goods; and to store in wooden buildings subject to extra-hazardous risks, if storage in fire-proof houses exempt from such risks could be obtained is not reasonable care; though what is reasonable care is more properly a mixed question, and for the jury. The law further is, that a factor is bound to obey all orders and instructions from his principal which concern the goods, are legal, and are within the compass of his agency, and of this character are orders to insure. That if any damage happen to the goods, or the principal sustain any loss, by reason either of the factor's care-

The fact that one of the jury who tried a cause on appeal, was security on the appeal, though good cause of challenge is not *of itself* a sufficient ground of new trial: But if it were shown that the juror acted under the influence of improper motives and principles, a new trial would be granted.

Neglect to challenge a juror before he is sworn, is a waiver of objection to him.

When there was good cause of challenge, unknown to the party at the time a new trial may be granted: But the party will not be permitted to take advantage of an ignorance which is the result of gross neglect.

Newly discovered evidence is a ground for new trial, but it must be such as is so material that it would be likely to change the verdict, or such as to show that justice has not been done, and it must also be such as the movant could not have obtained by diligent inquiry.

RICHMOND,
July, 1832.

GLOVER
v.
WOOLSEY &
Co.

See ante, page
78.

lessness, negligence, or disobedience of orders, he must answer to the principal for such loss or damage. It was for the jury alone to determine whether the facts in evidence would bring this case within these principles, and if they found for the plaintiff, to assess his damages. They have done so. But it is said,

2dly, That the verdict is against the weight of evidence.

To *weigh evidence* is peculiarly the province of the jury ; and where there has been testimony on both sides, and no misconduct imputable to them, their verdict should never be disturbed, because the court might happen to think the weight of evidence was the other way ; more especially should it not be done in this case where there was much testimony on both sides, the principles of law plain, and the case depended almost entirely upon its facts ; and in which the truth was only ascertained by the preponderance of testimony.

The most serious difficulty and perhaps the only one in the case arises out of the fact stated in the fourth ground— "That one of the jury who tried the cause was security for the plaintiff on the appeal." That this was good cause for challenge of the juror will be disputed by no one. Whether it be good cause for a new trial is not so clear. After hearing argument and considering the question deliberately, the conclusion to which the mind of the court has come, is, that that fact *of itself* is not sufficient cause for granting a new trial. The strong argument, and that which at first inclined the court to allow the motion, is, that the security upon appeal becomes, under our law, a party to the suit. If that were true, the court would not hesitate ; but upon consideration it is believed a proper construction of the act of 1826, (which is the law relied on) will not sustain the position assumed, that the security becomes a party. That is an "act to define the liability of securities on appeal, &c." In the 2d sec. it is enacted "that in all cases of appeal, where security hath been given and hereafter given, and hereafter to be tried, it shall be lawful for the plaintiff or his attorney to enter up judgment against the principal and the security jointly or severally, &c." It is evident both from the title and the enacting clause, that it was the design of the legislature to prescribe the mode of proceeding against securities on appeal, and to make certain and uniform the remedy against them which before the act was uncertain, and variant in the different districts. Before this act it was the practice in some parts of the State to proceed against securities on appeal by *scire facias* and in others to pursue the mode here prescribed. But no where was it ever supposed that when a man entered into a recognizance or bond for the eventual condemnation money, he made himself a party to the suit. If he were a party he would be subject to all the liabilities of a party. He might be required upon notice to produce books and papers ; it

RICHMOND,
July, 1832.

GLOVER
v.
WOOLSEY &
Co.

would be sufficient to serve copies of interrogatories on him; he might be required to respond to any notice in the progress of the cause—might make defence and plead, and do any other act which a party might do; for it would be unjust to make him a party, subject to a party's liability, and deny him his privileges. These are the necessary consequences of the security becoming a party; and surely such could never have been the intention of the legislature. And who has ever supposed, that the death of the actual defendant, notwithstanding this act, did not abate the suit altogether, or arrest its progress until parties could be made, according to the provisions of the judicial act of 1799; or that the suit might proceed against the security as survivor. And yet the act of 1826 authorizes a joint or several judgment. Though even if the act could receive the construction insisted on by the counsel for the defendants, still this case would not be within its provisions; for none but the security for a *defendant* could be such party, as none but a *plaintiff* or his attorney could sign such a judgment. Securities for plaintiffs could only be brought within the provisions of the act, by a liberal construction of it, and surely such an act as this would be, according to the construction contended for, should never be extended beyond its letter.

But though he be not a party to the suit, the security is not without interest in its event, as he is certainly answerable in some form of proceeding for the eventual condemnation money. How far this interest, which would have been good cause of challenge before the juror was sworn, is good cause for new trial, the court will proceed to consider. It may be laid down as a well settled rule, that an omission to challenge a juror before trial is a waiver of the objection to him. For it would be most unreasonable to allow a party the benefit of the verdict if favorable to him, and the benefit of a new trial on account of the objection, if the verdict should be adverse. It was so decided in Cotton v. Daintry, 1 Ventr. 30, cited in 5 Bac. 245, in which case the cause of challenge was for *favor*. Also in Loveday's case, cited in 5 Bac. 245, where the cause of challenge was for bias or prejudice. So also in Jaffries *et al. v.* Randall, 14 Mass. Rep. 206, where there was a statutory disqualification on account of interest in the question and prejudice, the court say "the objection to this juror is made by the statute a good cause of challenge, but we think it comes too late after verdict." And proceed to add, "If in this case we had evidence that the juror acted under the influence of improper motives or principles, we should set aside the verdict; or had the demandants made the requisite inquiry on the *voir dire* and failed of discovering the fact which would have disqualified the juror it would have been within the equity of the statute to grant them relief at this stage, but having omitted to avail themselves of their rights,

when the jury was impanneled, the motion cannot now obtain."

In South Carolina there have been many decisions upon this question in accordance with the cases already cited. The State v. Quard, 2 Bay, 150, where the cause was *alienage* of the juror. Ib. 153. The State v. O'Driscoll in which two of the jury had been of the grand inquest that found the bills true. 2 Nott and M'Cord, 261. The State v. John Fisher, where the disqualification was the non-payment of taxes. In the case of Mima Queen and Child v. Hopburn, 7 Cranch, 297, where the exception taken was to the disqualification of the juror, he not being an *inhabitant* of the county, the Supreme Court says " Whatever might have been the weight of this exception if taken in time, the court cannot sustain it now. The exception ought to have been made before the juror was sworn." The cases of Parker v. Thornton, 1 Strange, 640, and Wood v. Stoddart, 2 John. Rep. 194, relied on by defendants' counsel, are not opposed to these decisions. In the first case, the new trial must have been granted either on account of the misconduct of the returning officer, or the juror himself. There is in Strange a very imperfect report of this case, but the facts as stated in Lord Raymond, are that the juror returned on the pannel by the name of Hooper, was challenged, and the challenge allowed, and that afterwards he was offered as a talisman by the name of Hook, and sworn. In the case reported in Johnson, the whole jury was challenged on account of interest, but having notwithstanding been sworn, a new trial was granted, on account of the error of the court. Nor are the cases cited, in which new trials were granted because some of the jury had declared that a particular party should not have a verdict, adverse to the rule; the misconduct of the jury being the real cause. So also were the cases where the jurors on their *voir dire* swore they were not interested, when in fact they were. And besides, here the party moving had used the proper means to ascertain the juror's interest before they were sworn, but without success. The case of Knight v. The Inhabitants of Freeport, 13 Mass. Rep. 218, was a case in which plaintiff's son-in-law had tampered with the jury, and is inapplicable to the present question. The cases cited for the defendants, which bear most strongly upon the question under consideration, are those in which there was good cause of challenge to the jurors but unknown to the party at the time. Such is the case of Hyon v. Ballard, 7 Mod. 54. In these cases, new trials were granted, and with good reason. The law requires, that jurors should be *omni exceptione majores*, and will not suffer a party's rights to be concluded by the verdict of an incompetent jury, put upon him without his knowledge of such incompetency; nor will it impute ignorance of a fact as a fault, unless that ignorance be the result of gross neglect and inatten-

RICHMOND,
July, 1832.

GLOVER
v.
WOOLSEY &
Co.

tion, or the fact be one which he must reasonably be presumed to know. A. M. Woolsey, one of the defendants, has sworn that he was ignorant of the fact that Jacob Dill, one of the jury who tried the cause, was security upon the appeal, until after the verdict was rendered. That is no doubt true, but it is an ignorance that cannot avail him in this motion. The entry of an appeal was an important step in the progress of the cause. It was a public act, recorded on the minutes of the court, of which the adverse party was bound to take notice; and giving security was a necessary part of that act to make it regular and valid. Not to know that security was given, and of course who that security was, is culpable laches and inattention on the part of the defendants, against the effects of which the court cannot relieve. And that laches is the more remarkable, as there were between the entry of the appeal and the final trial, two mis-trials, which must have rendered an inspection of the records frequently necessary; and the entry of the appeal and name of the security are indorsed upon the declaration immediately after the first verdict. Whether the security upon the appeal become a party to the suit, as contended for under the act of 1826, or remain a mere security against whom a certain and summary remedy is given, the notoriety of the appeal is the same: and it would hardly be urged that a party could be allowed to plead ignorance of an adverse party for any purpose whatever.

But what is the disqualifying interest in this case? The appeal was by the plaintiff, who must have paid all costs up to that stage of the case, which form much the most considerable portion of them; and it is only for the subsequently accruing costs, that he is bound. The interest is indeed minute, and it is from the smallness of the interest we may account for the indifference of the defendants to this part of the case. Yet small as is the interest and secondary as is the liability of the security, they would have formed good cause of challenge; and even now the defendants might have relief by a new trial if there were any evidence that the juror acted under the influence of improper motives and principles. It may be added, that this individual, though not expressly accepted as a good juror, by defendants, was so accepted in effect, when that question was brought directly before them in selecting the jury. Upon the best consideration the court has been able to give the question, it is against the motion on this ground.

Newly discovered evidence is a ground for granting new trials; 12 Mod. 584; but it must be such as is so material that it would be likely to change the verdict, that is, such as to show that justice has not been done; and it must also be such that the movant could not have obtained by diligent inquiry.(a) Salk. 273. 647. 653. 3 Mor. Ess. 85. 6 Mod.

(a) See ante, page 80.

12

RICHMOND,
July, 1832.

GLOVER
*v.*
WOOLSEY &
Co.

22 & 222. The court will not disturb a verdict, to give an opportunity of letting in light testimony, which may not be likely to change the verdict, especially where witnesses have been examined to the same point; nor where there is the least question of its materiality or relevancy; or the least negligence of the party. The after-discovered testimony which is made the subject of the fifth ground in this motion is that of Dr. Johnson, who will prove, as is made known to the court, that in a conversation with the plaintiff respecting this suit, he mentioned " that he had always considered his prospect of success very doubtful, and that he had always been prepared for the worst; that he had, from the time a judgment was obtained against him, kept a fund in reserve to meet it, and by speculations on which fund, (viz.) in shaving paper, he had made as much as would remunerate him in case of failure in the suit; that this suit might in all probability be of service to him even if he should lose it, as it was the cause of his keeping a fund on hand that he thought he had used to greater advantage, than he otherwise should or might have done." Now it is not to be supposed that any diligence on the part of defendants could have brought them acquainted with the various conversations which plaintiff may have had on this subject with different individuals, or acquainted with this particular conversation. Such a discovery must be the result of mere accident. But to what does this conversation amount, and what are plaintiff's admissions? They are, at most, that he considered the result of the suit doubtful; that his apprehensions had been increased by his failure on the first trial; and that having set apart a fund to meet the most unfavorable event, and used that fund judiciously, he might not ultimately be a loser. Slight as this testimony is, it would not, perhaps, have been rejected as wholly immaterial and irrelevant, had it been offered at the trial, but it is not good cause for granting a new trial. If the admissions had gone to the extent that he had no cause of action; or if it might have been strongly inferred that he felt a consciousness of pressing an unfounded claim, the defendants might, perhaps, by a new trial, have had the benefit of such admissions. Such, however, is not their character, they being nothing more than the declaration of a prudent foresight, and the success of measures suggested by the proverbial uncertainty of law-suits.

Upon the subject of the justice and equity of this case, the court has but little to remark. There has been an entire loss of property to a large amount, and justice and equity require that the loss should fall upon the owner, the plaintiff, unless it were the result of the defendants' negligence, or disobedience of orders, which justice and equity are in exact conformity with law. The jury were alone competent to determine the facts which must fix the loss upon one party or the other.

This they have done under the instruction of the court upon the matters of law, to which instruction no exception is taken. And after a most careful examination of the whole case, it is the opinion of the court that their verdict should stand.

The motion is therefore overruled.

R. H. and J. W. WILDE, and A. B. LONGSTREET, for plaintiff.

T. FLOURNOY and R. R. REID, for defendants.